## May, Appellant, v. May.

Argued April 11, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Norman T. Boose,* and with him *Budd B. Boose,* for appellant.

*Clarence L. Shaver,* for appellee.

OPINION BY PORTER, P. J., July 12, 1928:

The appellant filed his libel in the court below, praying for a decree of absolute divorce from his wife, on the grounds of barbarous and cruel treatment and indignities to his person. In that libel he was obliged to aver, as a jurisdictional fact, and did aver, that he was a bona fide resident of the County of Somerset. The libel averred that the parties were married on the 6th day of November, 1924, and that from that time until on or about June 27, 1925, they lived and cohabited in the City of Johnstown, County of Cam-

bria, Pennsylvania. The libel was sworn to on the 24th day of October, 1925, and averred the libellant was then residing in the Borough of Somerset, County of Somerset and State of Pennsylvania, and that the residence of the respondent was then in the City of Johnstown, County of Cambria. The respondent filed an answer specifically denying that the residence of the libellant was in the County of Somerset and averred that his residence is in the City of Johnstown, Cambria County, which was the common domicile of the parties. This answer thus clearly raised the question of the jurisdiction of the court to entertain the libel. The answer further denied the allegations of barbarous and cruel treatment and indignities to the person of the libellant in the libel alleged. A master was appointed who, after hearing such testimony as the parties saw fit to produce, returned to the court such testimony with a report recommending a decree of divorce. The learned judge of the court below, in an opinion which discloses that he carefully considered the evidence, held that the testimony did not clearly establish, that on November 9, 1925, the date of the filing of the libel, the domicile of the libellant was in the County of Somerset, and entered a decree dismissing the libel upon the ground that the court was without jurisdiction to entertain the proceeding. The appellant appeals and assigns for error the entry of this decree.

The brief of appellant urges this court not only to reverse the decree of the court below but to enter a decree in favor of the libellant, divorcing the parties. The learned counsel who prepared the brief seems to have misconceived the function of this court in divorce proceedings, which is to consider the entire testimony and determine whether that testimony clearly establishes the right of a libellant to a decree of divorce, upon the grounds in the libel averred. If any evidence was produced before the master which would warrant

a decree in divorce upon the merits, that evidence does not appear in the record as printed in the paper book of the appellant. There is not one sentence in the evidence, as printed, which would warrant a finding that the respondent was guilty of any barbarous and cruel treatment or indignities to the person of her husband. The libel might, for this reason alone, be dismissed and the decree of the court below affirmed. The record, as printed, does not disclose that any steps were taken in the court below which might, in other than divorce proceedings, relieve the appellant of the burden of printing all the testimony. Notwithstanding the deficiency of the brief and record as printed, we have considered the testimony relating to the domicile of the libellant and the jurisdiction of the court to entertain the libel, and are convinced of the correctness of the decision of the learned judge of the court below. The libellant was obliged to aver, as a jurisdictional fact, and accordingly did aver, that he was a bona fide resident of the County of Somerset, at the time of filing his libel. The only evidence material to the question of the domicile of the libellant at the time his libel was filed, presented on his behalf, was his own oral testimony, which was substantially as follows. He was employed as a baggagemaster by the Baltimore & Ohio Railroad Company and had for years worked on a train which ran between Rockwood and Johnstown. The schedule of the train upon which he served rendered it necessary for him to spend the nights of Monday, Wednesday and Friday in Johnstown and the other four nights of the week in Somerset, and he maintained a room for living quarters in each of the towns. His testimony clearly establishes that at the time the parties were married, November 6, 1924, the domicile of each of them was in Johnstown, Cambria County. The appellant did not attempt to explain for how long a period of time, prior to his marriage, his domicile had been in Cambria County,

nor is their any other evidence which would indicate how long he had been there domiciled. After the marriage the common domicile of the parties continued to be in the City of Johnstown and there is nothing in the evidence indicating that they ever had a common domicile elsewhere. The appellant was a registered voter of the City of Johnstown and paid taxes in the County of Cambria down to and including the year 1925. At the time he testified, March 26, 1926, the only taxes he had paid were those in the County of Cambria. On June 29, 1925, the libellant left his wife and procured a room at another place in the City of Johnstown and had continued to maintain a room in that city down until the time he testified before the master. He admitted in his testimony that his domicile continued to be in the City of Johnstown up until the latter part of September, 1925, practically three months after he had left his wife. He testified that his residence began in Somerset the latter part of September, 1925. He was then asked by his counsel: "Q. Where had you lived prior to that time? A. In Johnstown. Q. Will you explain why you changed your residence from Johnstown to Somerset? A. It cost me more to live at this end of the road than at the other end and I was spending four nights out of the week here." He still had living quarters, down to the time he testified before the master, at both Johnstown and Somerset. There was no change whatever in his habits or manner of living. He spent the same number of nights in each of the places that for years had been his habit, both long before and after the time when he separated from his wife. He had the same room in Somerset that he had occupied prior to his marriage and during all of his married life. There was not a scintilla of evidence indicating that there was in that room any furniture which he had taken from Johnstown at the time of or after his alleged change of domicile. He was asked by his counsel: "Q.

You testified your residence is in Somerset, where do you get your mail? A. I have had mail sent to Johnstown and on the train I get the most of it." On cross-examination he was asked: "Q. Have you been working lately? A. No, sir. Q. How long have you been laid off? A. For a bad leg. Q. For how long? A. For about two months. Q. Where have you been staying? A. In my room at Johnstown and going to the doctor. Q. When not working you stay in your room at Johnstown? A. I stay there because I have to be with the doctor every day." This testimony of libellant was contradicted by other witnesses, but his own testimony failed to clearly establish a change of domicile. His testimony did not show that he had taken from Johnstown to Somerset his personal effects or that there had been any change whatever in pre-existing conditions.

Having been domiciled in Johnstown that domicile must be presumed to continue until another sole domicile has been acquired by actual residence, coupled with the intention of abandonment of the former domicile. Domicile is a jurisdictional requirement and is to be determined by the intention of the party conjoined with actual residence, but this intention may be shown more satisfactorily by acts than by declarations. A mere intention to remove from an existing domicile, without an actual removal, works no change. Vague and uncertain evidence cannot remove the legal presumption arising from the establishment of a domicile with the intention of there indefinitely remaining, and such domicile this appellant had established in Cambria County. No person can at the same time have more than one domicile: Hindman's Appeal, 85 Pa. 469. Had this appellant filed his libel in Cambria County, it would be difficult to see in the record before us anything that would have warranted the courts of that county in denying him relief on the ground merely

that he had lost his domicile in that county: Harrison
v. Harrison, 69 Pa. Superior Ct. 580; Frazer v. Frazer,
71 Pa. Superior Ct. 382; Lipps v. Lipps, 90 Pa. Superior Ct. 86; Davis v. Davis, 91 Pa. Superior Ct. 354.
The decree is affirmed at cost of the appellant.